United States District Court
Southern District of Texas
**ENTERED**
March 14, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EARNEST DWAYNE ROBERSON; aka COON, TDCJ # 02046319, §§§§ Plaintiff, § VS. § LAURA BURGESS, *et al*, §§§ Defendants. § | CIVIL ACTION NO. H-17-2891 |

EARNEST DWAYNE ROBERSON; aka §
COON, TDCJ # 02046319, §
§
§
Plaintiff, §
VS. § CIVIL ACTION NO. H-17-2891
§
LAURA BURGESS, *et al*, §
§
Defendants. §

## **MEMORANDUM AND ORDER**

Plaintiff Earnest Dwayne Roberson (TDCJ #02046319) was a state inmate in the custody of the Texas Department of Criminal Justice (TDCJ) at the time he filed this lawsuit. Plaintiff filed this complaint alleging a violation of his civil rights under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, concerning the conditions of his confinement. [Doc. No. 1]. He originally named the following defendants in his complaint: (1) Assistant Warden Laura Burgess ("Burgess") at the Jester III Unit; (2) Correctional Officer Carl Neal ("Neal"); (3) Mr. C. King, mail room clerk ("King"); (4) Dr. Stephanie Christina Abron ("Abron"); (5) Warden Harrah ("Harrah") at the Wallace Pack Unit; (6) Assistant Warden Bilnoskie ("Bilnoskie") at the Wallace Pack Unit; and (7) LVN Gwendolyn Crawford ("Crawford") at the Wallace Pack Unit. [*Id.*]. At the Court's request, Plaintiff filed a More Definite Statement. [Doc. No. 11]. Plaintiff also filed an affidavit in support of his pleadings. [Doc. No. 13]. Based on his pleadings, on December 19, 2017, the Court dismissed all of Plaintiff's claims against Harrah and Bilnoskie and the access to courts claims against Burgess and King on the merits. [Doc. No. 16]. In that same Order, the Court

ordered service of process to be made on Burgess, King, Neal, Abron, and Crawford regarding Plaintiff's remaining claims against them. [*Id.*]

Pending are motions for summary judgment filed by Defendants Laura Burgess, Chris King, and Carl Neal [Doc. No. 30] and Stephanie Christina Abron and Gwendolyn Crawford [Doc. No. 34 (under seal)]. Plaintiff has not filed a response to either motion, and his time to do so has expired. The Court has carefully considered the motions, Plaintiff's pleadings, evidence, and applicable law and concludes as follows.

## I.     BACKGROUND

Plaintiff alleges that before he was incarcerated, he was in a serious accident that resulted in the amputation of his right leg and significant damage and weakening of his left leg. [Doc. No. 1 at 8-9]. He alleges that he needs a wheelchair and that he brought his own private wheelchair to prison. [*Id.*]. Plaintiff claims that in March or April 2016, while he was on the Jester III Unit, Defendant Neal groped him inappropriately on two occasions, touching his private parts during a search. [Doc. No. 1 at 4]. Plaintiff claims that he filed charges through the Prison Rape Elimination Act ("PREA") authorities. [*Id.*].

Plaintiff claims that after he reported the incidents regarding Neal, Neal and Abron retaliated against him by taking away his wheelchair in deliberate indifference to his medical needs. [*Id.*]. He also alleges that Abron faxed Crawford, a nurse at the Wallace Pack Unit where Plaintiff was transferred in May 2016, to take away his wheelchair and make him use crutches. [*Id.*]. He alleges that he was forced to scoot on his buttocks through filth and urine in order to get to the bathroom or other places. [*Id.*]. He also claims that he had to use a mop bucket in order to bathe because he could not get to the showers and he could not get meals or his medicine. [*Id.*].

Plaintiff alleges that on or around July 12, 2017, he discovered that a letter that he had sent the Attorney General was in the mail room on Jester III because it had been returned to sender for insufficient postage. [*Id.* at 12-13]. Plaintiff noticed that his letter had been opened, and King stated that he had opened it because it needed another stamp. [*Id.* at 13]. Plaintiff alleges that he told King that he should not have opened the letter because the stamp goes on the outside. [*Id.*] Plaintiff alleges that after that incident, Burgess approached him in the hallway and questioned him about the letter he had sent to the Attorney General. [*Id.*].

## II. LEGAL STANDARD

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). "Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)).

A motion for summary judgment "cannot be granted simply because there is no opposition." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the unopposed motion and grant summary judgment when a prima facie showing for entitlement to judgment is made. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. DISCUSSION

#### A. Failure to Exhaust–Claims against Burgess, Neal, Abron, and Crawford

This case is governed by the Prison Litigation Reform Act ("PLRA"). Under the PLRA, codified as amended at 42 U.S.C. § 1997e, an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." 42 U.S.C. §§ 1997e(a)-(c) (2018). The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). Exhaustion is mandatory. *See Booth*, 532 U.S. at 741. The PLRA's exhaustion requirement mandates "proper exhaustion," which demands compliance with all procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to

this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter,* 534 U.S. at 524-25.

By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citation omitted). In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id.* (citations omitted).

Consistent with Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004). TDCJ has promulgated a two-step procedure to facilitate the investigation and resolution of prison grievances. *Id.* A prisoner must pursue a grievance through both steps for it to be considered exhausted. *Id.* (citing *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001)).

Defendants Burgess, Neal, Abron, and Crawford contend that, although Plaintiff filed several Step One grievances, he did not pursue any of the grievances against them through Step Two, and, accordingly, he failed to exhaust his administrative remedies for his claims against each of them. As summary judgment proof, Defendants submit records of Plaintiff's grievances from February 6, 2016 to October 1, 2017, the relevant time period for the claims in question.[1] The records reflect that Plaintiff did not exhaust his remedies against Defendants Burgess, Neal,

---

[1] Doc. No. 30-1 (Ex. A); Doc. No. 34-1 (Ex. A) (under seal).

Abron, and Crawford.[2] Plaintiff does not controvert this evidence and does not contend that he filed Step Two grievances for any of his claims against these Defendants. Accordingly, he does not raise a fact issue that he properly exhausted his administrative remedies in compliance with the PLRA, and Burgess, Neal, Abron, and Crawford are entitled to summary judgment for failure to exhaust available administrative remedies regarding the claims against them.

**B.** **King**

Plaintiff filed Step One and Step Two grievances against Defendant King, alleging that he opened Plaintiff's incoming legal mail outside of Plaintiff's presence and that Plaintiff was not permitted to inspect the letter prior to it being re-sent to the Attorney General with sufficient postage. [Doc. No. 1-2; Doc. No. 30-1 at 1-7]. King moves for summary judgment on the merits. [Doc. No. 30].

The First Amendment protects a prisoner from mail censorship that is not "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 409–12 (1989); *Turner v. Safley,* 482 U.S. 78, 89 (1987), *see also Brewer v Wilkinson,* 3 F.3d 816, 823–25 & n. 9 (5th Cir. 1993). King asserts that TDCJ has a legitimate penological interest—prison safety and security through the inspection of mail for contraband—and that TDCJ Board policy 03.91 allows him to open incoming prisoner mail.[3] Although TDCJ policy states that mail inspections shall be conducted in the inmate's presence,[4] King maintains that he is entitled to qualified immunity under the circumstances because: (1) Plaintiff does not demonstrate a violation of a constitutional right; (2) King's conduct did not violate clearly established statutory or

---

[2] *See* Doc. No. 30-1 at 1-155; Doc. No. 34-1 at 1-155.

[3] *See* Doc. No. 30-2 at sec. III(A) (providing that "incoming correspondence from any legal correspondent shall be opened and inspected for contraband only").

[4] *Id.* (providing that such "inspection shall be in the offender's presence").

constitutional rights of which a reasonable person would have known; and (3) Plaintiff does not establish that King's actions were objectively unreasonable.

Public officials acting in the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735 (citation omitted).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.* at 654 (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).

Plaintiff claims that his letter to the Attorney General came back to the Jester III Unit because it had insufficient postage, and when it came back to the mailroom, King opened the incoming mail outside of Plaintiff's presence. Plaintiff alleges that when he asked to inspect the contents, King would not allow him to do so but did place the proper postage (provided by Plaintiff) on the letter and re-sent it to the addressee.

King maintains that TDCJ prison policy requires the opening of incoming legal mail to inspect it for contraband and that such inspection furthers the legitimate penological interest of the prison in preserving safety and security. Indeed, TDCJ has a legitimate interest in preserving safety and security and in preventing the distribution of contraband, and the "task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.'" *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 132 S. Ct. 1510, 1517 (2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)). Plaintiff does not dispute that TDCJ has a legitimate penological interest in preserving safety by preventing the distribution of contraband and that its policy regarding opening incoming mail is reasonably related to that purpose.

To the extent that Plaintiff claims that King did not follow TDCJ policy and opened the mail outside of his presence, the Fifth Circuit has held that, in light of *Turner*, 482 U.S. 78, and *Thornburgh*, 490 U.S. 401, "the violation of the prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer*, 3 F.3d at 825. Although Plaintiff alleges that King did not allow Plaintiff to inspect the contents of the incoming mail to make sure that nothing was missing, he presents no evidence to raise a fact issue that King removed any portion of his letter to the Attorney General. Further, Plaintiff does not allege that any non-frivolous case regarding the fact or condition of his confinement was harmed by King's handling of his mail. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In this regard, the Court has previously noted that Plaintiff fails to state a claim for interference with his access to courts.[5] Accordingly,

---

[5] *See* Doc. No. 16 at 5-6 (noting that Plaintiff discloses in his More Definite Statement that he was not substantially delayed in obtaining judicial review of his claims and he did not lose the right to commence, prosecute, or appeal any suit as a result of King's [or Burgess's] actions).

Plaintiff fails to raise a fact issue that King violated his clearly established constitutional rights in connection with his letter to the Attorney General. In addition, Plaintiff does not raise a fact issue that King's actions were objectively unreasonable given all of the circumstances.

Because Plaintiff does not raise a fact issue that King violated his clearly established constitutional rights and acted in an objectively unreasonable manner regarding Plaintiff's incoming legal mail, Plaintiff does not meet his burden to overcome King's assertion of qualified immunity. *See King*, 821 F.3d 654. Therefore, King is entitled to summary judgment and Plaintiff's claim against him must be dismissed.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendants' motions for summary judgment [Doc. Nos. 30 & 34] are **GRANTED**.

2. Plaintiff's claims against Defendant Chris King and the access to courts claims against Warden Laura Burgess are **DISMISSED** with prejudice on the merits.

3. Plaintiff's remaining claims against Warden Laura Burgess, Dr. Stephanie Christina Abron, Correctional Officer Carl Neal, and LVN Gwendolyn Crawford are **DISMISSED** without prejudice for failure to exhaust administrative remedies as required by the PLRA.

4. All other pending motions, if any, are **DENIED**.

5. A Final Judgment shall issue by separate Order.

---

*See also* Doc. No. 13 at 4 (disclosing that at the time Plaintiff sent the letter to the Attorney General and it was returned to sender, he had no cases pending).

The Clerk shall send a copy of this Order to all parties of record.

SIGNED at Houston, Texas, this \_\_\_14th\_\_\_ day of March, 2019.

                                              ANDREW S. HANEN
                                       UNITED STATES DISTRICT JUDGE